## JOSEPH A. JANNETTA AND OTHERS v. ANTONIO VICTORIO JANNETTA AND OTHERS.[1]

May 5, 1939.

No. 32,058.

[1]Reported in 285 N. W. 619.

*Jenswold & Dahle,* for appellants.
*Lewis, Grannis & Underhill,* for respondents.

PETERSON, JUSTICE.

In an action for specific performance of a contract for testamentary disposition of property, a temporary injunction was issued enjoining the defendant executor from distributing and the other defendants from receiving pursuant to the final decree of the probate court, and from conveying, transferring, or encumbering the property which was the subject of the contract. Defendants appeal from the order granting the temporary injunction.

The complaint alleges that the deceased and his wife, Angelica, jointly accumulated considerable property, some of which was in her name but most of which was in his name; that they made an agreement (the complaint contains no allegation whether or not it was in writing) by the terms of which they agreed to make joint wills giving the survivor a life estate in all of his or her property with remainder to the five children of the parties in equal shares, and that the parties made such wills.

The five children were the three plaintiffs and the two defendants Antonio Victorio Jannetta and Rosie Sullivan. Each was to have one-fifth of the property of their mother and father upon the death of the survivor. Mrs. Jannetta died on February 1, 1929. Her will was not probated. Instead, the surviving husband and the five children "entered into an agreement and settlement" whereby it was agreed that the children would transfer to their father all

their interest in the property of their mother upon the promise that all the children would share equally in his estate at his death. The children performed the agreement on their part. Thereafter the father obtained a decree of descent of the mother's property, which recited that she died without leaving a will. The father did not keep the agreement on his part. He made a will on April 21, 1936, in which he revoked all former wills. By it he gave each of the plaintiffs less than a one-fifth share of the property and made certain specific bequests and devises to each of the defendants with the residue to the defendants Antonio Victorio and Rosie.

The father died on May 21, 1938. His will was admitted to probate and a final decree of distribution was entered on October 31, 1938, distributing the estate pursuant to the terms of the will. The residue for distribution consisted of certain real estate appraised in excess of $10,000 and personal property appraised in excess of $35,000, of which over $30,000 is cash. All the personal property is in the hands of the executor.

The temporary injunction covered all the property that was to be distributed under the final decree of distribution. The plaintiffs are each entitled to one-fifth, or three-fifths in all, if they should prevail. It was not clear upon the hearing just how the three-fifths could be secured to plaintiffs without tying up the whole estate, unless they were to be permitted to take their entire shares out of the cash. It could not be done from the real estate alone. Having this in mind, the court below made provision in its order that the parties and counsel agree, if they could, what property should be released from the temporary injunction, and, if they could not agree, that on motion it would make an order covering the matter. There was no application for a modification of the temporary injunction.

The defendants make innumerable contentions, which may be grouped as follows: (1) Plaintiffs are not entitled to specific performance upon the grounds of inadequacy of consideration and failure to allege that the several agreements for testamentary disposition of the property were in writing; (2) the district court could not enjoin the executor without interfering with the exclusive jurisdiction of the probate court of estates of deceased persons;

(3) the plaintiffs had an adequate remedy at law, there being no allegations that defendants were insolvent and threatening to convey; and (4) the restraints were excessive, since they related to the entire estate and not simply to plaintiffs' shares.

■ The purpose of a temporary injunction is to preserve the *status quo* so that parties may not by their acts *pendente lite* impair the effect of the judgment to be rendered. Where there is reasonable probability that plaintiff may establish a cause of action, the court may make the recovery effective against the acts of the defendant. Mathwig v. Olson, 190 Minn. 262, 251 N. W. 518; First Nat. Bank v. Schunk, 201 Minn. 359, 276 N. W. 290. The issuance of a temporary injunction is largely in the discretion of the trial court. Behrens v. City of Minneapolis, 199 Minn. 363, 271 N. W. 814. Tested by these rules, we are unable to say that there was any abuse of discretion.

■ A party may bind himself by contract to make a testamentary disposition of his property. The contract must be proved by clear, positive, and convincing evidence. Whether the contract alleged can be so proved can be determined only after trial. That the contract is oral does not prevent specific performance if the usual conditions relating to specific performance obtain. The children would have been entitled to specific performance of the agreement between the father and the mother to make joint and mutual wills giving the survivor a life estate with remainder to the children, in the absence of the agreement between them and their father after her death, under the rule of Mosloski v. Gamble, 191 Minn. 170, 253 N. W. 378. Hence at the time the agreement was made by the father and the children all of them had interests in the property herein involved. In Anderson v. Anderson, 197 Minn. 252, 266 N. W. 841, we held that specific performance may be granted to children, who have fully performed, on their part, a contract made with their parent for testamentary disposition of her estate consisting of real and personal property, in the nature of a family settlement, where, as here, it appears that the parent and the children all had interests in the property which the children transferred to the parent under an agreement with the parent that she would leave the

property, or so much thereof as remained, to them at her death. The instant case comes squarely within the Anderson case. It is not necessary to repeat what we said in the Anderson and Mosloski cases, where the question is discussed fully, except to say that we pointed out in the Anderson case that there is something besides pecuniary consideration for such contracts, being made as they are with a view to settling claims among members of a family which are not altogether measurable in money, forestalling family disputes and controversies concerning the disposition of the parent's property, preventing litigation, and preserving the peace and property of the family. Equity looks with favor on such an arrangement and will uphold it although there was no dispute when it was made.

■ Specific performance of a contract to make a will disposing of property may be granted in the district court by a judgment against the representative, heirs, legatees, and devisees without interfering with the probate court's exclusive jurisdiction of estates of decedents. The probate court has jurisdiction to administer estates of deceased persons and to determine rights to property so far as they depend on devolution, testate or intestate, but it has no general jurisdiction. It has no jurisdiction to grant specific performance or determine property rights as between third parties and the representative, heirs, legatees, and devisees.

The action for specific performance is not to set aside or nullify the will or to enforce a prior will made pursuant to the contract. Wills are revocable, but contracts to make wills are irrevocable without the consent of the parties. It is the contract which is enforced in the district court. Mosloski v. Gamble, *supra;* Doyle v. Fischer, 183 Wis. 599, 198 N. W. 763, and note, 33 A. L. R. 733.

The district court has general equity jurisdiction. In a certain sense a contract such as we have here creates a trust between the decedent and his children. Anderson v. Anderson, *supra.* While we speak of the action as one for specific performance, what the court really does is to impress a trust on the property which is the subject of the contract and at the same time execute the trust by decreeing the title to the property to those who are entitled to it.

Mosloski v. Gamble, *supra*. Equity proceeds upon the maxim that it ought to do justice completely and not by halves. The property not necessary for purposes of administration is regarded as being held in trust for those who are entitled to it under the contract. Laird v. Vila, 93 Minn. 45, 100 N. W. 656, 106 A. S. R. 420; Svanburg v. Fosseen, 75 Minn. 350, 78 N. W. 4, 43 L. R. A. 427, 74 A. S. R. 490. The judgment granting specific performance does not in any manner interfere with the personal representative's possession of the property during administration and enforces the trust against such property only after every legitimate demand of administration has been satisfied. A decree for specific performance establishes as against the representative and distributees the prior and superior right of the contract claimants to the property remaining for distribution, which it enforces by awarding the property directly to such claimants as the parties entitled thereto. The district court judgment has nothing to do with the devolution of title by testation or descent. That devolution is adjudged by the probate court. Then, and not until then, the district court judgment operates on the title, as by the decree of distribution it is confirmed in the distributees. The probate function is finished before that of the district court takes hold.

There need be, and is, no conflict between the two courts. It is to be presumed that the probate court will respect any judgment rendered by the district court in the proper exercise of its jurisdiction. This point is illustrated by cases in the federal courts where nonresident heirs, devisees, and legatees sue in equity to establish and recover their interests in the property, real and personal, of decedents. Decrees adjudicating the rights of such nonresidents are granted and enforced without interfering with administration in the probate court. Waterman v. Canal-Louisiana B. & T. Co. 215 U. S. 33, 30 S. Ct. 10, 54 L. ed. 80; Harrison v. Moncravie (8 Cir.) 264 F. 776.

■ The temporary injunction was to keep the estate intact so that a decree of specific performance, if granted, would be effective. The defendants argue that a party will not be restrained in an action by his creditor for the recovery of money from disposing of

272

his property unless it is made to appear that he is insolvent or threatens to convey his property with the intention of hindering and delaying his creditors. The argument has no application to the instant case. Plaintiffs sue, not as creditors seeking to prevent defendants from dealing with their own property during the pendency of the action, but as the true owners asserting claims of title and possession, which, if established, simply would not permit any exercise of dominion at all over such property by defendants.

The court below indicated that it considered the temporary injunction was excessive and required modification by eliminating some of the property from its terms. Very properly, it advised the parties and counsel to agree on the modifications and, if they could not agree, to present the matter to the court on motion for a further order in the premises. No such motion was made. Since the question was not presented below for determination, we will not consider whether, or in what respects, the temporary injunction should be modified. See 1 Dunnell, Minn. Dig. (2 ed. & Supps.) § 384. The motion still may be made.

Affirmed.

MR. JUSTICE HILTON, incapacitated by illness, took no part.

