ROSE T. DALE, BY EDWARD A. SMITH, GENERAL GUARDIAN OF HER ESTATE AND PERSON, v. MINNIE PUSHOR.[1]

January 27, 1956.

No. 36,588.

*E. Luther Melin,* for appellant.
*F. B. Sowle,* for respondent.

MATSON, JUSTICE.

In an action to set aside the cancellation of a contract for deed, plaintiff appeals from a judgment for the defendant.

This action was originally commenced by Rose T. Dale as plaintiff. Subsequently, Edward A. Smith was appointed general guardian of Rose and he was thereafter substituted as party plaintiff. Unless otherwise indicated, Rose will be described herein as the plaintiff.

This action grows out of the cancellation of a contract for deed.[2] Defendant, Minnie Pushor, and her then husband Clarence, on September 18, 1950, sold and conveyed by contract for deed to Mabel Jeffery a house and lot in Minneapolis. Two days later they assigned their interest in the contract as vendors to Mary Blanche Lovejoy who on the same day reassigned the contract to defendant, Minnie Pushor, alone. These assignments merely removed defendant's husband from the picture.

On January 17, 1952, the vendee, Mabel Jeffery, entered into an agreement with the plaintiff herein, Rose T. Dale, whereby the latter agreed to purchase the premises, together with the personal property therein, for $18,057.30. As part of the purchase agreement plaintiff assumed and agreed to pay the above contract for deed.

Plaintiff, as assignee of the original vendee, defaulted in the making of certain payments under the contract for deed. Because of such defaults the defendant, Minnie, served a notice of cancellation of said contract upon the plaintiff herein on June 6, 1953, and upon Mabel Jeffery on June 8, 1953.

This action to nullify the notice of the cancellation of contract and to adjudge it to be invalid; to compel defendant to accept the payments in arrears and to reinstate the contract; and further to enjoin defendants from evicting plaintiff from the premises was commenced on July 23, 1953. The action did not come on for trial until September 30, 1954. The trial court specifically found that at the time the notice of cancellation of contract was served on the plaintiff she was mentally ill and emotionally upset and that she had then suffered a deprivation of her reasoning faculties and was incapable of understanding and acting with discretion in the ordinary affairs of life. It was further found that the period of redemption under said notice of cancellation had expired and that throughout said period the contract was and since has been in default and that neither plaintiff nor her guardian has made tender of the amounts

[2]Twice before this matter has been before this court on appeals in an unlawful detainer action brought by defendant against plaintiff. See, Pushor v. Dale, 240 Minn. 179, 60 N. W. (2d) 128, and Pushor v. Dale, 242 Minn. 564, 66 N. W. (2d) 11.

in default. Judgment was entered for the defendant, and plaintiff appeals.

Questions arise as to whether the evidence sustains the court's finding that no tender had been made by plaintiff of the amounts in default under the contract and as to whether the cancellation of contract proceedings is invalid because the statutory notice of cancellation (M. S. A. 559.21) was served on plaintiff when she was mentally incompetent. In addition, error is predicated on the trial court's denial of various motions for leave to add additional parties defendant and to file a proposed amended and supplemental complaint.

Does the evidence sustain the finding that plaintiff has not made tender of the amounts in default? Before examining the evidence we turn to the legal requirements of an effective tender to accomplish a reinstatement of the contract when a notice of cancellation has been served under § 559.21. Proceedings under § 559.21 for the cancellation of a contract for deed which is in default are in the nature of a statutory foreclosure, akin to a foreclosure under a power of sale in a mortgage. McKinley v. State, 188 Minn. 325, 330, 247 N. W. 389, 391. In Dunn v. Hunt, 63 Minn. 484, 65 N. W. 948, involving an action to compel the execution of a certificate of redemption of real estate from a mortgage foreclosure sale, the plaintiff actually tendered the amount due on the last day of redemption but the tender was refused. During the pendency of the subsequent action to compel redemption, the tender was not continuously kept good by keeping sufficient money available for payment at all times. In the Dunn case Mr. Justice Mitchell said (63 Minn. 485, 65 N. W. 949):

"* * * The cardinal principle of the doctrine of tender is that it is substantial performance. Hence it must be continuing; that is, there must be a continued readiness. The universal rule is that a tender, in order to be effectual for any purpose, must be kept good, except in cases where the mere refusal to accept the tender effects a particular result. * * * Equity is no less strict than the law in this respect.

"* * * Here the tender was the very foundation upon which plaintiff's right of action depended. Hence, not having been kept good, it is ineffectual for any purpose, and plaintiff stands to-day precisely as if no tender had ever been made."[3]

We hold the Dunn case controlling. It follows that, in an action to set aside the cancellation of a contract for deed under § 559.21 after the expiration of the 30-day redemption period on the ground that the vendee has tendered payment of the amount due and in default under the contract, the tender in order to be effective must be kept good at all times by having the necessary sum of money continuously available for payment whenever payment is requested.

In the instant case the trial court asked plaintiff's counsel in the course of the trial whether plaintiff had the necessary money on hand to pay the entire amount due under the contract. Plaintiff's counsel responded:

"Well, I don't think, Your Honor, that we are in a position now to pay it, because the woman is declared insane and there is no means."

In the light of this admission it is clear that the plaintiff, assuming that she had ever made a tender, had not kept the tender continuously good. The finding of the trial court on the issue of tender must therefore be affirmed.

▉▉▉ Was the cancellation of the contract under § 559.21 invalid because at the time of the service of the notice of cancellation the plaintiff, as found by the trial court, was mentally incapable of understanding and acting with discretion in the ordinary affairs of life? In June 1936 she was committed to the Rochester State Hospital but was discharged the following November. She was again adjudged insane on December 8, 1953. Again we must not overlook that cancellation-of-contract proceedings under § 559.21 are in the nature of a statutory foreclosure, akin to the foreclosure of mortgage under a power of sale.

---

[3]Caveat: See Murray v. Nickerson, 90 Minn. 197, 203, 95 N. W. 898, 901, as to effective tender where plaintiff's rights are created by contract of the parties.

In McKinley v. State, 188 Minn. 325, 247 N. W. 389, the defaulting vendee, who had been adjudged insane, was served with a notice of cancellation one day before she was formally discharged. The trial court, however, found that at the time she was not insane. In considering the validity of the statutory cancellation of a contract for deed, this court said (188 Minn. 330, 247 N. W. 391) that the fact that the proceeding to terminate the vendee's interest in the property was instituted the day before her formal discharge by the probate court did not render it invalid since it was akin to a foreclosure under a power of sale in a mortgage and since the foreclosure of a mortgage is not of itself invalid because of the mortgagor's insanity. This court then cited and quoted from Lundberg v. Davidson, 72 Minn. 49, 54, 74 N. W. 1018, 1019, 42 L. R. A. 103, 106, wherein Mr. Justice Mitchell said:

"A foreclosure under a power is a proceeding in pais as well as in rem; and the fact that one of the terms of the exercise of the power is the service of the notice upon the occupant of the premises does not change the proceeding into a judicial one, or into a personal action against such occupant. Such a notice is in its nature analogous to notice to a tenant to quit, or a notice of a dishonored promissory note or bill of exchange. Where the notice required is a personal notice, it does not matter that the person upon whom it is served is an infant, or insane, or under any other disability. Of course such disabilities cannot be used to gain an improper advantage; and, if they are, the court will set aside the sale. * * *

* * * * *

"But no case can be found which holds that a sale under a power coupled with an interest is void on the ground that the mortgagor, or any person upon whom notice is to be served, is insane, or under any other disability."

It follows that the service of a notice of cancellation of a contract for deed under § 559.21 is valid although the person upon whom the notice is served is an infant, or insane, or under any other disability. As pointed out by Mr. Justice Mitchell, such disabilities cannot be

used to gain an improper advantage. Appropriate proceedings are available to invoke the court's protective powers.

Our holding in Veranth v. Moravitz, 205 Minn. 24, 284 N. W. 849, is not in contravention of the above principles since in that case we were concerned with the termination-of-contract proceedings under Mason St. 1938 Supp. § 9576-2, which was originally enacted in 1933 because of the economic emergency then existing (L. 1933, c. 422).[4]

■ The foregoing questions have been decided on the assumption that no error occurred when the trial court denied plaintiff's motion for leave to add additional parties defendant and to file an amended and supplemental complaint. We now turn to that issue. It will be recalled that the action was commenced on July 23, 1953, and came on for trial September 30, 1954. The first blended motion for additional parties defendant·and for filing an amended and supplemental complaint was denied on February 10, 1954. On February 13, 1954, the plaintiff moved for a vacation of the above order of denial. This latter motion was denied on April 21, 1954. Despite the above orders of denial, and without any appeal having been taken from any of said orders, the plaintiff on September 17, 1954, again moved the court for leave to add parties defendant and to file the amended and supplemental complaint. This latter motion came before the court at the commencement of the trial and was denied by Judge Leslie L. Anderson partly on the ground that the issues had already been determined by the prior denial of said motions by Judge Levi M. Hall. The aforesaid blended motions, if they had been granted,

---

[4]This emergency act (L. 1933, c. 422) suspended cancellation of contracts for deed under Mason St. 1927, § 9576 (now M. S. A. 559.21), and provided for their cancellation by a judicial proceeding requiring an application to the court for an order adjudging the contract terminated. This emergency act expressly provided for the presentation to the court by the vendee of any legal and equitable defenses which he claimed. The operation of the emergency act was limited to two years by its own terms but it was thereafter reenacted during several legislative sessions. Its final reenactment was in 1939 (L. 1939, c. 33, §§ 1, 6); it expired on March 1, 1941. Upon its expiration, Mason's St. 1927, § 9576 (now § 559.21), again became operative and that is the statute with which we are here concerned.

would have added nine new parties defendant[5] and would, pursuant to the amended and supplemental complaint, have presented an entirely new theory and cause of action, namely, one of conspiracy and fraud whereby plaintiff (who was then allegedly known by defendants to be incompetent) was induced, in reliance upon false misrepresentations as to income and reasonable market value, to buy said premises to her detriment.

We are not here concerned with the supplemental pleading phase of plaintiff's motion because a supplemental complaint may set forth only "transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Rule 15.04 of Rules of Civil Procedure. Rule 15.04 does not provide for supplemental pleading of facts of which a party was ignorant when he made his former pleading. Such matter should be set forth by amendment.[6] A label is of course not necessarily determinative of the purpose and nature of a motion.

■ Did the trial court, however, abuse its discretion in denying plaintiff's motion for an amended complaint and for the addition of new parties defendant? In Colstad v. Levine, 243 Minn. 279, 284, 67 N. W. (2d) 648, 653, this court said:

"* * * Rule 15.01 of Rules of Civil Procedure provides that pleadings may be amended with leave of court and that 'leave shall be *freely* given *when justice so requires.*' (Italics supplied.) This rule which makes no substantial change in our prior Minnesota practice,[8] vests wide discretionary powers in the trial court for the liberal granting of an amendment to the pleadings when justice in the

---

[5]The motion proposed the addition of new parties defendant as follows: Clarence L. Pushor (defendant's divorced husband); F. B. Sowle (defendant's attorney); Mary Blanche Lovejoy; Mabel Jeffery; Dahl Investment Company, Inc.; William Selz (regular attorney for the Dahl Company); F. B. Johnson; Robert H. Peterson; and Bernice Theilmann.

[6]Minnesota Rules of Civil Procedure, Tentative Draft, p. 84.

particular case so requires,[9] even though the proposed amendment may change the legal theory of the action.[10]"[7]

■ Although Rule 15.01 states the former law, the purpose of the new rules of civil procedure, as evidenced by Rules 1, 8.06, and 61, gives added emphasis to the need for liberality in its application.[8] Despite the need for liberality, it is not to be overlooked that the granting or denial of a motion for an amendment to the pleadings is a matter lying in the sound discretion of the trial court and its action will not be reversed except for a clear abuse of discretion.[9]

The liberality to be shown in the allowance of amendments depends in part upon the stage of the action and in a great measure upon the facts and circumstances of the particular case.[10] In the case at bar we have a motion asking for leave to file a proposed amended complaint which abandoned the original theory of action and introduced an entirely new cause of action which, according to plaintiff's showing, required the joinder of nine additional parties defendant. If the amendment had been permitted, it would have been necessary to allow the defendant and the additional parties considerable time to gather and prepare a large amount of new evidence. Although it would not necessarily have been an abuse of discretion to grant plaintiff's motion if, in so doing, sufficient time had been granted to permit the defendant, and the nine new parties defendant, to prepare for the trial of what would have amounted to an entirely new case, we cannot say that the trial court abused its discretion in denying the motion. Under the circumstances, no material injus-

[7]The footnotes referred to in the above quotation are as follows:

"[8]Brannan v. Shertzer, 242 Minn. 277, 64 N. W. (2d) 755; 1 Youngquist & Blacik, Minnesota Rules Practice, p. 476.

"[9]Brannan v. Shertzer, *supra*.

"[10]Wright, Minnesota Rules, p. 101; Holmes v. Campbell, 12 Minn. 141 (221); 6 Cyclopedia of Federal Procedure (3 ed.) §§ 18.18, 18.19; see, 12 Minn. L. Rev. 97, 105 to 112."

[8]See, 1 Youngquist & Blacik, Minnesota Rules Practice, p. 476.

[9]Brannan v. Shertzer, 242 Minn. 277, 64 N. W. (2d) 755; 15 Dunnell, Dig. (3 ed.) §§ 7696, 7707, 7708, and 7713a.

[10]See, 2 Pirsig's Dunnell, Minn. Pl. (3 ed.) §§ 1685, 1686, 1688.

tice resulted to the plaintiff in leaving her with the alternative of starting a new action. In fact, when we consider the time required in preparing for a proper presentation of the new cause of action by both the plaintiff and the defendant and by nine new parties defendant, it is difficult to see how the final adjudication of the matter would have been appreciably delayed by resort to a new action. We find no abuse of discretion under the circumstances.

Plaintiff, relying upon Rule 15.02, further contends that her motion to amend ought to have been granted in order to conform the complaint to the evidence presented. Although Rule 15.02 expressly permits certain amendments of the pleadings to conform to the evidence, consent to litigate an issue may not be implied where the opposing party seasonably objects to the admission of the evidence pertinent to that issue. Roberge v. Cambridge Co-op. Creamery Co. 243 Minn. 230, 67 N. W. (2d) 400. See, 39 Minn. L. Rev. 918, 920. In the instant case, defendant objected to the evidence at various intervals in the trial, and the judge received the evidence only for the purpose of considering it in relation to plaintiff's original complaint and not in relation to plaintiff's proposed amended complaint. There could therefore be no amendment of the complaint under Rule 15.02 as a matter of course. We find no abuse of discretion by the trial court in denying the motion despite defendant's objection to the admission of the evidence as provided for in Rule 15.02.

Since the joinder of new parties defendant would be wholly without purpose unless leave to file an amended complaint had been granted, we need not consider that issue. A judgment against either party to the action, pursuant to the theory of the original complaint and according to which the action was tried, could not have affected the interests of any of the proposed additional parties defendant and they were therefore not necessary parties under Rule 19.01.

The judgment of the trial court is affirmed.

Affirmed.